IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NO. PD-1816–03




ROBERT POINDEXTER, Appellant

v.

THE STATE OF TEXAS



ON STATE’S PETITION FOR DISCRETIONARY REVIEW
FROM THE THIRTEENTH COURT OF APPEALS
NUECES COUNTY



                      Cochran, J., delivered the opinion of the unanimous Court.

O P I N I O N 

           After a bench trial, appellant was convicted of the felony offense of possession of a
controlled substance with intent to deliver. The Corpus Christi Court of Appeals held that
the evidence was legally insufficient, reversed the conviction, and ordered an acquittal.


 We
granted the State’s Petition for Discretionary Review to determine whether the court of
appeals erred in finding that appellant was not affirmatively linked to the cocaine found in
various locations in his home.


 Assessing all the evidence–including the unobjected-to
hearsay–in the light most favorable to the verdict, we find that the evidence links appellant
to the contraband and is sufficient to support his conviction. We reverse the court of appeals’
judgment of acquittal and remand for consideration of appellant’s remaining claims.
I.
           We quote the court of appeals’ summary of the evidence:
On January 18, 2001, members of the Tri-County Narcotics Task Force
serving Aransas, Nueces, and San Patricio Counties (the “narcotics officers”)
secured a search warrant for 1307 Van Loan, located in Corpus Christi. The
warrant identified “a black male subject known only as Poindexter, aged
approximately mid 60’s” and authorized his arrest along with the “other
occupants of the suspected place whose names and physical descriptions are
unknown.” The search warrant was issued expressly on the basis of an
affidavit executed by narcotics officer Russell Kirk. That affidavit accused
Poindexter of illegal drug possession based only on the following statements
regarding a confidential informant (“CI”): “CI informed me that CI was inside
Suspected Place within the past 24 hours and that CI personally observed the
Suspected Party in possession of a quantity of cocaine, therein.”
The affidavit referred to a drug buy that occurred on January 17, 2001.
On that day, Officer Kirk drove his CI to 1307 Van Loan, where the CI got out
of the car and went into the house. Officer Kirk stayed in his car, which he
parked down the street. Before the CI emerged from the house, a gray dually
pickup truck arrived and parked in the driveway. Officer Kirk could not see
or identify its driver. He did not record its license plate number. 
Subsequently, the CI emerged from the house and met up with Officer Kirk.
The CI had successfully purchased $100 worth of crack cocaine, which Officer
Kirk testified the CI did not have before entering the house at 1307 Van Loan.
On January 19, 2001, the narcotics officers executed a warrant on the
location. No one was home. The narcotics officers gained access to the home
by beating down the front door with a battering ram. The officers conducted
a systematic search of the house, which uncovered narcotics and paraphernalia.
The contraband was found in two locations: a bedroom towards the front of
the house (the “front bedroom”) and the master bedroom.
In the front bedroom, the officers found crack residue caked in several
vials sitting on a plate found either inside or on top of a dresser. In the master
bedroom, the officers discovered cocaine, crack cocaine, razor blades, several
small plastic bags, and a scale with cocaine residue on it. These items were
discovered in two different closets. The crack cocaine was found in a small
tin box of breath mints hidden in the ceiling of the master bedroom’s linen
closet.


 Some cocaine was also found stuffed in the same spot. Additionally,
the officers discovered a few small plastic bags hidden inside a brown paper
bag on the top shelf of the linen closet. Finally, they found a scale and razor
blades inside a different closet located in the master bedroom. No fingerprints
or photographs were taken, but the evidence was collected and sent to the lab
for testing. The contraband was confirmed to be cocaine and crack cocaine.




           The court of appeals declined to consider the probative value of the C.I.’s unobjected-to out-of-court statements that appellant possessed cocaine, sold cocaine, and hid the cocaine
in an open hall closet.


 It also concluded that, because there was some evidence indicating
that another person was present in the house at the time the C.I. bought crack cocaine, the
State failed to prove that appellant had exclusive possession of the house.


 Finally, it stated
that there were insufficient affirmative links between appellant and the drugs and drug
distribution materials found in the house, and therefore no rational trier of fact could find that
the evidence was legally sufficient to support his conviction.


 
II.
           When deciding whether evidence is sufficient to support a conviction, a reviewing
court must assess all the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could find the essential elements of the crime beyond a
reasonable doubt.


 To prove unlawful possession of a controlled substance, the State must
prove that: (1) the accused exercised control, management, or care over the substance; and
(2) the accused knew the matter possessed was contraband.


 Whether this evidence is direct
or circumstantial, “it must establish, to the requisite level of confidence, that the accused’s
connection with the drug was more than just fortuitous. This is the whole of the so-called
‘affirmative links’ rule.”


 
           The “affirmative links rule” is designed to protect the innocent bystander from
conviction based solely upon his fortuitous proximity to someone else’s drugs.


 This rule
simply restates the common-sense notion that a person–such as a father, son, spouse, 
roommate, or friend–may jointly possess property like a house but not necessarily jointly
possess the contraband found in that house.


 Thus, we have formulated the rule that “[w]hen
the accused is not in exclusive possession of the place where the substance is found, it cannot
be concluded that the accused had knowledge of and control over the contraband unless there
are additional independent facts and circumstances which affirmatively link the accused to
the contraband.”



           In deciding whether the evidence is sufficient to link the defendant to contraband, the
trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be
given to their testimony.


 Under Texas Rule of Evidence 802, he is entitled to give
probative value to “inadmissible hearsay admitted without objection.”


 Thus, once the trier
of fact has weighed the probative value of unobjected-to hearsay evidence in its factfinding
process, an appellate court cannot deny that evidence probative value or ignore it in its
review of the sufficiency of the evidence.


 An appellate court may determine only if any
rational trier of fact could have–based on all of the evidence admitted at trial (including any
unobjected-to hearsay)–found the essential elements of the offense beyond a reasonable
doubt.



 
III.
           The court of appeals held, and the parties agree, that appellant was linked to the Van
Loan house where the contraband was found, but that he did not have exclusive possession
of it.


 This conclusion was based upon evidence that: 1) both bedrooms in appellant’s
house appeared to be used; 2) a second person, possibly a woman, opened the door for the
C.I. during the January 17th drug buy; and 3) because Officer Kirk was too far away, he was
unable himself to positively identify appellant as the driver of the gray dually truck that
arrived during the January 17th drug buy. This is a very slender evidentiary reed to support
a factual conclusion that someone else lived with appellant or had joint control over the
house. Nonetheless, because the State did not contest this conclusion, we will not infer
appellant’s knowledge of and control over the contraband solely from his possession of the
house where drugs were found. Thus, we look for additional facts and circumstances which
affirmatively link appellant to the drugs.



A.       Officer Kirk’s testimony that the CI told him that appellant was selling narcotics
out of his residence at 1307 Van Loan was probative evidence of appellant’s guilt
of possession of crack cocaine.

           At trial Officer Kirk testified on direct examination, with no objection or request for
a limiting instruction,


 as follows:
Q        Now, back on January 17th of last year, did you have an occasion to investigate an
individual that you knew at that time as Poindexter, a 60-year-old black male, six foot
four, 190 pounds, that lived at 1307 Van Loan Avenue?
A        Yes, ma’am.
Q        And do you recall how that particular address and individual came to your attention?
A        Through the use of an informant. He gave me some information about that residence,
the subject in that residence, Poindexter, being in possession of and selling narcotics.

           The CI’s statements also came into evidence through the affidavit and search warrant
for 1307 Van Loan, admitted as State’s Exhibit Number 3, after the defense stated it had
“[n]o objections.” The affidavit states, in part: “Within 24 hours of the date of this affidavit,
I received information from a confidential informant (hereinafter referred to as “CI”).... CI
informed me that CI was inside the suspected place within the past 24 hours and that CI
personally observed the Suspected Party in possession of a quantity of cocaine, therein.”            The court of appeals held that the CI’s statements were not objectionable hearsay
statements, but rather out-of-court statements explaining how the defendant became the focus
of a police investigation. The court stated: “Poindexter had no basis on which to object to
Officer Kirk’s testimony because it was not offered as hearsay .... The trial court properly
allowed Officer Kirk’s testimony into the record for the purpose of demonstrating what the
CI said, but those statements could not be used to prove the truth of the matter asserted: that
Poindexter was in possession of drugs.”


 
           We disagree. While appellant could have objected to these out-of-court statements
as hearsay, he did not. While appellant could have requested the trial court to limit his
consideration of these statements to show how or why the officers’ attention focused upon
appellant, he did not. In fact, appellant did not contest the propriety of the initial
investigation, the sufficiency of the warrant, the existence of probable cause, or any other
preliminary legal question. He simply contested the ultimate fact that he knowingly
possessed the cocaine. Thus, all of the State’s evidence was offered to prove appellant’s
guilt, not to explain how appellant became the focus of a police investigation. As this Court
noted in Marin v. State:
evidence of a certain kind, such as hearsay, might be excluded upon the
request of a party to the lawsuit. The trial judge has no duty to exclude it on
his own, and would probably fall into error if he did. Once admitted without
objection, such evidence enjoys a status equal to that of all other admissible
evidence. In particular it has probative value and will support a judgment in
favor of the party offering it.


 

           The out-of-court statements of the C.I. have sufficient probative value, in and of
themselves, to establish an affirmative link between appellant and the crack cocaine found
in his home.


 But, even putting aside this testimony, the State established other sufficient
affirmative links between appellant and the drugs.
B.       The First Factor: The contraband was both in plain view and recovered from
a hidden location accessible only to one who exercised control over the house. 




            The court of appeals reasoned:
 
Regarding the first factor, no State witness testified that the narcotics and
contraband were found in plain sight. Each discovery was made inside a
bedroom, not in any of the common areas of the house, and they were made
only after methodical searching. The State offered no testimony regarding
how many bedrooms the house had or whether the doors to those bedrooms
were found closed, locked, or ajar. The light most favorable to conviction
leads us to conclude that the plate found in the front bedroom was most likely
visible, even though the State’s witnesses gave conflicting testimony as to
whether it was found on top of or inside the dresser. But even so, that was
only crack residue, not the lion’s share of narcotics that was recovered from
the hidden stash in the closet ceiling. Since the bulk of the illegal cache of
drugs was out of sight, the evidence regarding the first factor weighs against
an affirmative link.




We agree with the court of appeals that the evidence shows that the only cocaine found in
plain view was the residue found on a plate in the front bedroom. However, appellant was
linked “to the lion’s share of narcotics that was recovered from the hidden stash in the closet
ceiling.” Besides the unobjected-to testimony related above, Officer Kirk testified:
Q        Had you received information during the course of your investigation of where the
narcotics would be located inside this residence?
A        Yes, ma’am, I did.
Q        Based on this information, did that lead you to the open linen closet in the master
bedroom?
A        Yes, ma’am, it did.
Q        And what was the first item that you found in this shelving in the master bedroom?
A        Well, the first item, like I said, was a brown bag, brown paper sack. It contained
smaller plastic bags inside of it commonly used to package narcotics.
Q        And what was the next thing you found in that shelving?
A        That item was located on the top shelf. Above that there was a hole, a small hole in
the ceiling. I checked that hole in the ceiling, and that’s when I pulled out an Altoids
box and checked the inside of it. It contained crack cocaine.
Q        Okay. And then were there any other items found inside that hole while you were
present?
A        Yes, ma’am. More cocaine.

On cross-examination, Officer Kirk testified as follows:
 
Q        Is this what you found, something like this, up in the attic?
A        Something like that.
Q        Not in the attic but in the hole up in the closet.
A        Yes, sir. By the shelf.
***
Q        Now, according to what you testified, your CI had told you where you could find the
drugs, right?
A        Yes, sir.
Q        I mean, you went directly to the closet?
A        Not directly yeah. I knew–he told me where Mr. Poindexter kept his narcotics.

The court of appeals apparently considered this latter testimony for its truth, but found it
“vague and imprecise”:
The only testimony regarding Poindexter’s knowledge of the secret place in
which those narcotics were found came from Officer Kirk. Kirk testified that
he knew where Poindexter kept his drugs based on the information given to
him by his CI. Although that is some evidence on the issue of knowledge, it
is too vague and imprecise for a rational finder of fact to conclude that
Poindexter knew drugs were hidden in the ceiling. Thus, the State’s evidence
links Poindexter to the house but does not establish that he knew of the secret
stash of drugs hidden in the ceiling.


 

This testimony is neither vague nor imprecise–it informed the trial judge that appellant knew
where the contraband was hidden–an essential component of the culpable act of
“possession.”


 It defies logic to think that the C.I. told Officer Kirk that appellant kept his
crack cocaine hidden in the ceiling (exactly where it was found), and yet appellant did not
know of that secret stash. 
C.       The Second Factor: The Accused Was the Owner of the Premises or the Place
Where the Contraband Was Found.


 
 
           We agree with the appeals’ court that there was evidence that appellant resided at
1307 Van Loan during the time in question. The trial court took judicial notice of the fact
that appellant listed 1307 Van Loan as his address on the bail bond he secured after being
charged in this case. The State also offered a utility bill addressed to appellant at 1307 Van
Loan, and a photograph of him, both recovered during their search of the house. Any rational
factfinder could conclude that appellant lived at this house.
D.       The Fourth Factor: The contraband was conveniently accessible to the
accused.


 

           Regarding this factor, the appeals court held “The fourth factor favors the State.
Because Poindexter apparently lived at 1307 Van Loan, the contraband was certainly more
accessible to him than to someone who did not live at the 1307 Van Loan address. We know
this because the State’s witnesses consistently testified that the house was locked and not
open to the public.”


 Officer Kirk’s testimony implied that, during the controlled buy,
appellant drove up in a gray dually pickup truck, got out, went inside, and sold the drugs to
the informant:
Q        Now, you did the purchase of the narcotics on the 17th. Was there an attempt to
execute the warrant on the 18th of January?
A        Yes, ma’am, there was.
Q        And what occurred at that time?
A        Actually, nothing occurred. . . . We did a drive by this residence and noticed that the
gray dually was not home, or wasn’t at the residence. So based on the information
that I obtained during the investigation during the original purchase, the probable
cause buy, when the dually is not there, Mr. Poindexter is not there. So we declined
to execute the warrant that day on the 18th.




There was also evidence that appellant hid the cocaine in a secret place–it was accessible to
him as a resident but not to a casual visitor or one who did not know of the secret place.


 
           Finally, Officer Kirk testified on redirect examination that nothing linked any other
person to the Van Loan house:
Q        And did you find any other links to any other individuals other than the defendant,
Robert Johnson Poindexter, and other letters, any other pictures, or anything else that
would link them to that residence?
A        No, ma’am.
Q        During the course of your investigation, was there anyone else mentioned [in]
reference [to] that residence other than Poindexter?
A        No, ma’am.

This is crucial testimony, as it demonstrates that there was no affirmative evidence that any
other person lived in the same house or exercised care, control, or custody over either the
house or the drugs. The mysterious woman who opened the door to the C.I. was never seen
again and never connected to the house or drugs in any other way. Nor is there any evidence
that this mysterious woman, even if she exercised joint possession of the house, exercised
exclusive possession over the drugs. The mere fact that a person other than the accused
might have joint possession of the premises does not require the State to prove that the
defendant had sole possession of the contraband, only that there are affirmative links between
the defendant and the drugs such that he, too, knew of the drugs and constructively possessed
them.


 In sum, there is no evidence that would support a conclusion that appellant was an
innocent bystander to someone else’s drug operations within his home.
E.       The Sixteenth Factor: The quantity of the contraband.
           Regarding the sixteenth factor, the appeals court held that the “quantity of contraband
discovered, favors the State. The State’s witness testified that the contraband was
identifiable upon discovery. That is, the narcotics officers who pulled the cocaine and crack
cocaine out of the ceiling were able to identify it as such on the spot.”


 We further note that
manufacturing and packaging materials, including glass tubes or vials used to make powder
cocaine into crack cocaine, razors, baggies, and a scale, were found during the search. This
evidence suffices to prove that appellant not only possessed the crack cocaine found in the
closet, but intended to distribute it, just as he had previously sold some to the C.I.
IV.
           The relative probative value of all of the above evidence, including the hearsay
evidence, was assessed by the trial judge in reaching his verdict. When the trial judge found
appellant guilty, he expressed his view that the evidence, including the hearsay evidence, was
probative and sufficient to support his finding. We cannot reweigh or recharacterize that
evidence.


 We conclude that a rational trier of fact could have found beyond a reasonable
doubt that appellant exercised care, custody, control, and management over the contraband
and that appellant knew the substance possessed was contraband. Therefore, we hold that
the evidence was legally sufficient to support appellant’s conviction. We reverse the
judgment of acquittal entered by the court of appeals and remand the case to that court to
consider appellant’s remaining claims.



 
Cochran, J.
Delivered: January 12, 2005
Publish